FILED
2022 MAR 10 AM 10:41
CLERK
U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH
CENTRAL DIVISION

| | |
|---|---|
| SAMANTHA W., <br><br> Plaintiff, <br><br> v. <br><br> KILOLO KIJAKAZI, Acting Commissioner of the Social Security Administration, <br><br> Defendant. | **MEMORANDUM DECISION AND ORDER AFFIRMING THE COMMISSIONER'S DECISION DENYING DISABILITY BENEFITS** <br><br> Case No. 2:20-cv-00818 <br><br> Magistrate Judge Daphne A. Oberg |

Plaintiff Samantha W.[1] filed this action asking the court to reverse and remand the Acting Commissioner of the Social Security Administration's ("Commissioner") decision denying her application for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401–434, 1381–1385. (*See* Compl. ¶ 1, Doc. No. 3.) The Administrative Law Judge ("ALJ") denied her application, finding Ms. W. did not qualify as disabled. (Certified Tr. of Admin. R. ("Tr.") 12–29, Doc. No. 15.) The court[2] has carefully reviewed the record and the parties' briefs.[3] Because substantial evidence supports the

---

[1] Pursuant to best practices in the District of Utah addressing privacy concerns in certain cases, including Social Security cases, the court refers to Plaintiff by her first name and last initial only.

[2] The parties consented to proceed before a magistrate judge in accordance with 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. (Doc. No. 11.)

[3] Pursuant to Civil Rule 7-1(g) of the Rules of Practice for the United States District Court for the District of Utah, the appeal will be determined on the basis of the written memoranda, as oral argument is unnecessary.

ALJ's findings regarding Ms. W.'s residual functional capacity, and the ALJ properly evaluated her subjective symptoms, the decision is affirmed.

## STANDARD OF REVIEW

Sections 405(g) and 1383(c)(3) of Title 42 of the United States Code provide for judicial review of a final decision of the Commissioner. This court reviews the ALJ's decision and the whole record to determine whether substantial evidence supports the ALJ's factual findings and whether the ALJ applied the correct legal standards. 42 U.S.C. § 405(g); *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007); *Glenn v. Shalala*, 21 F.3d 983, 984 (10th Cir. 1994). "[A]n ALJ's factual findings . . . shall be conclusive if supported by substantial evidence." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1153, ___ U.S. ___ (2019) (internal quotation marks omitted). Although the evidentiary sufficiency threshold for substantial evidence is "not high," it is "more than a mere scintilla." *Id.* at 1154 (internal quotation marks omitted). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks omitted). "The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence." *Lax*, 489 F.3d at 1084 (internal quotation marks omitted). And the court may not substitute its judgment for that of the ALJ. *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004).

## APPLICABLE LAW

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also id.* § 1382c(a)(3)(A). An

2

individual is considered disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 423(d)(2)(A); *see also id.* § 1382c(a)(3)(B).

In making this disability determination, the ALJ employs a five-step sequential evaluation, considering whether:

1) The claimant presently engages in substantial gainful activity;

2) The claimant has a severe medically determinable physical or mental impairment;

3) The impairment is equivalent to one of the impairments listed in the appendix of the relevant disability regulation which preclude substantial gainful activity;

4) The claimant possesses a residual functional capacity to perform past relevant work; and

5) The claimant possesses a residual functional capacity to perform other work in the national economy considering his/her/their age, education, and work experience.

*See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *Bowen v. Yuckert*, 482 U.S. 137, 140–42 (1987); *Williams v. Bowen*, 844 F.2d 748, 750–51 (10th Cir. 1988). The claimant has the burden, in the first four steps, of establishing the disability. *Ray v. Bowen*, 865 F.2d 222, 224 (10th Cir. 1989). At step five, the burden shifts to the Commissioner to show the claimant retains the ability to perform other work existing in the national economy. *Id.*

PROCEDURAL HISTORY

Ms. W. applied for disability insurance benefits and supplemental security income in February and March 2016, alleging disability beginning September 2014. (Tr. 13, 307–28.) An ALJ denied Ms. W.'s claims in 2017 after an administrative hearing, but the Appeals Council

3

remanded the claims for further proceedings in 2019. (*Id.* at 161–76, 183–84.) A different ALJ held a second administrative hearing on Ms. W.'s claims in April 2020. (*See id.* at 68–111.) Thereafter, this ALJ issued a decision finding Ms. W. not disabled and denying benefits. (*Id.* at 12–29.)

At step two of the sequential evaluation, the ALJ determined Ms. W. had the severe impairments of calcific tendinitis of the right hip, degenerative disc disease of the lumbar spine with radiculopathy, degenerative disc disease of the cervical spine, seizure disorder, and depressive disorder. (*Id.* at 15.) At step three, the ALJ found Ms. W.'s impairments did not meet or equal the severity of an impairment listing. (*Id.* at 16.) At step four, the ALJ determined Ms. W. had the residual functional capacity ("RFC") to perform light work with additional physical and mental limitations. (*Id.* at 19.) With this RFC, the ALJ found Ms. W. unable to perform any of her past, relevant work. (*Id.* at 27.) However, the ALJ concluded jobs existed in significant numbers in the national economy which Ms. W. could perform. (*Id.* at 27.)

The Appeals Council denied Ms. W.'s request for review, making the ALJ's decision the final decision of the Commissioner. (*See id.* at 1–3.)

## DISCUSSION

Ms. W. raises two claims of error. First, she challenges the ALJ's assessment of her physical RFC. (Opening Br. 11–16, Doc. No. 18.) Second, she argues the ALJ failed to properly evaluate her subjective symptoms. (*Id.* at 16–19.)

**A. Physical RFC Findings**

Ms. W. first argues the ALJ's physical RFC findings were unsupported by substantial evidence.

The ALJ found Ms. W. had the physical RFC to perform light work with the following limitations: "[N]o more than 4 hours total on her feet.  Would need to use a cane when walking more than 20 yards at one time.  Occasional postural activities, except no ladders and scaffolds.  Frequently reach.  Frequently handle, finger, and feel.  No exposure to extreme vibration. No exposure to industrial hazards." (Tr. 19.)

In evaluating Ms. W.'s RFC, the ALJ gave "some weight" to the opinions of the orthopedic consultative examiner, Dr. Guellich. (*Id.* at 26.) Dr. Guellich opined that Ms. W. could "lift, carry, push, and pull 50 pounds occasionally and 25 pounds frequently, stand and walk for 6 hours and sit for 6 hours, and [had] no other restrictions or limitations." (*Id.* (citing *id.* at 943–49).) The ALJ found these exertional limitations "seem[ed] high for someone who exhibited hip, lumbar spine, and cervical spine range of motion deficiencies during the exam, but the lack of substantial limitations is consistent with the claimant having unremarkable sensory, reflex, and motor loss findings during that exam." (*Id.*) The ALJ agreed with Dr. Guellich's opinion that Ms. W. "likely did not require a cane at all" at the time, "as evidenced by the claimant's abilities to walk without difficulties and not using an assistive device during the consultative exam." (*Id.*)

The ALJ also considered Ms. W.'s subjective symptom testimony, her treatment history, diagnostic imaging and testing, and exam records. (*Id.* at 20–23.) The ALJ found Ms. W. had "some deficits caused by musculoskeletal impairments as evidenced by abnormal findings at times, her imaging studies and diagnostic studies showing some abnormal findings, and the need for various conservative treatment modalities." (*Id.* at 23.) However, the ALJ found Ms. W.'s "relatively conservative treatment and improvement with that treatment at times in conjunction with the lack of significantly abnormal exam findings on a longitudinal basis" was

5

inconsistent with her allegations and supported his RFC assessment. (*Id.*) Specifically, the ALJ found the "lack of significantly reduced range of motion, strength, and sensation findings throughout the record" supported a finding that Ms. W. could "perform light work with no more than 4 hours total on her feet and . . . occasional postural activities, except no ladders or scaffolds." (*Id.*) The ALJ also limited Ms. W. to frequent reaching, handling, fingering, and feeling "based on the abnormal shoulder and cervical spine imaging, some abnormal upper body exam findings, and the need for cervical medial branch blocks and a cervical ablation, but also considering the lack of greater treatment and the lack of significantly abnormal exam findings." (*Id.*) Overall, the ALJ stated his RFC assessment was "supported by the lack of significantly abnormal exam findings on a consistent basis, lack of significantly abnormal imaging and diagnostic studies, the claimant's relatively conservative treatment, [and] the partial opinions by the orthopedic consultative examiner." (*Id.* at 26–27.)

Ms. W. argues the ALJ appropriately rejected the opinions of the consultative examiner, Dr. Guellich, but then erred by "craft[ing] an RFC out of whole cloth" based on his own interpretation of the medical evidence, which did not properly account for her impairments. (Opening Br. 11, 15–16, Doc. No. 18.) She argues the record is "devoid of any evidence that could have informed the ALJ's determination that [she] should perform the exertional requirements of light work." (*Id.* at 16.)

The ALJ's physical RFC findings are supported by substantial evidence. Contrary to Ms. W.'s argument, the ALJ did not reject Dr. Guellich's opinions in their entirety. Rather, the ALJ gave "some weight" to Dr. Guellich's opinions and partially relied on them in his RFC assessment. (Tr. 26–27.) The ALJ credited Dr. Guellich's opinion regarding a lack of substantial limitations, but he found the exertional limitations opined by Dr. Guellich were too

6

unrestrictive, considering Ms. W.'s deficiencies, and he imposed more restrictive exertional limitations based on other medical evidence in the record. (*Id.* at 26.) Because the ALJ partially relied on Dr. Guellich's opinions, the ALJ's physical RFC finding was supported by medical opinion evidence, contrary to Ms. W.'s suggestion.

Further, the ALJ was not required to support every aspect of his RFC determination with medical opinion evidence. "[T]here is no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on the functional capacity in question." *Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012). Instead, "[t]he determination of RFC is an administrative assessment, based upon *all the evidence* of how the claimant's impairments and related symptoms affect her ability to perform work-related activities." *Young v. Barnhart*, 146 F. App'x 952, 955 (10th Cir. 2005) (unpublished) (emphasis added). Thus, the absence of medical opinion evidence supporting some aspects of the RFC does not mean the ALJ "crafted the RFC out of whole cloth." The ALJ properly relied on other medical evidence in the record in determining Ms. W.'s RFC, and he was not required to cite a medical opinion to support each finding.

Considering the whole record, the ALJ's physical RFC findings are supported by substantial evidence. As set forth above, the ALJ explained the basis for each aspect of his physical RFC assessment, citing medical evidence. In finding Ms. W. was capable of light work with no more than four hours on her feet, the ALJ noted a "lack of significantly reduced range of motion, strength, and sensation findings throughout the record," citing numerous treatment records. (Tr. 23.) The ALJ also noted her ability to ambulate freely without a cane during exams, including exams as recently as 2019 and 2020. (*Id.*) Additionally, the ALJ relied on Dr. Guellich's opinion that Ms. W. did not have substantial limitations, finding it consistent Dr.

7

Guellich's examination. (*Id.* at 26.) Although Ms. W. points to contrary evidence in the record, the court will not reweigh the evidence or substitute its judgment for that of the ALJ. *See Langley*, 373 F.3d at 1118. The record evidence supporting the ALJ's findings is more than "a mere scintilla" and, therefore, constitutes substantial evidence. *Biestek*, 139 S. Ct. at 1154.

For these reasons, the ALJ did not err in his assessment of Ms. W.'s physical RFC.

### B. Evaluation of Subjective Symptoms

Ms. W. next argues the ALJ failed to properly evaluate her subjective symptoms. (Opening Br. 16–19, Doc. No. 18.)

Evaluation of subjective symptom testimony follows a two-step process. First, the ALJ "must consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms, such as pain." Social Security Ruling ("SSR") 16-3p, 2016 SSR LEXIS 4, at *3; *see also* 20 C.F.R. § 404.1529(b). Second, the ALJ must "evaluate the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities." SSR 16-3p, 2016 SSR LEXIS 4, at *4; *see also* 20 C.F.R. § 404.1529(c). In doing so, the ALJ must "examine the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." SSR 16-3p, 2016 SSR LEXIS 4, at *10. The ALJ must also consider "whether there are any inconsistencies in the evidence and the extent to which there are any conflicts between [the claimant's] statements and the rest of the evidence, including [the claimant's] history, the signs and laboratory findings, and statements by . . . medical sources or other persons." 20 C.F.R. § 404.1529(c)(4).

The record shows the ALJ properly evaluated Ms. W.'s subjective symptoms following this two-step process. The ALJ noted Ms. W. alleged pain related to her lumbar spine, cervical spine, and right hip which "affect[ed] her ability to move and do activities." (Tr. 20.) He acknowledged Ms. W. "reported a pain level of seven or eight out of 10 on an average day," and described her testimony regarding how this pain limited her ability to climb steps, sit, stand, walk, lift, and carry. (*Id.*) The ALJ found, "[a]fter careful consideration of the evidence," that Ms. W.'s "medically determinable impairments could reasonably be expected to cause the alleged symptoms." (*Id.*) However, he found Ms. W.'s "statements concerning the intensity, persistence and limiting effects of these symptoms [were] not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (*Id.*) The ALJ explained that "while the record supports determining that she has had some limitation in functioning, it does not demonstrate the level of abnormality one would expect for an individual limited to the levels alleged." (*Id.* at 21.) First, the ALJ found Ms. W. had received "relatively conservative treatment," including pain medication, injections, physical therapy, cervical medial branch blocks, and neck ablation. (*Id.*) The ALJ cited records indicating these interventions provided some relief, including reports that Ms. W.'s pain was "well controlled and stable" in 2015, she did well in physical therapy, and she reported "75% relief/improvement from taking opioids" in 2019. (*Id.* at 21–22.) The ALJ also noted that "despite [Ms. W.'s] complaints of significant pain, she was generally assessed to be in no distress throughout the record," which he found inconsistent with the level of pain alleged. (*Id.* at 23.)

Ms. W. argues the ALJ improperly discounted her subjective symptoms with boilerplate language and mischaracterized her course of treatment as "conservative." (Opening Br. 18–19,

9

Doc. No. 18.)  Ms. W. also argues the ALJ's findings regarding pain relief were unsupported.  (*Id.*)  Specifically, Ms. W. claims the ALJ cited only a single 2015 treatment note, and this note indicated she reported a "9 out of 10" level of back pain despite medication.  (*Id.* at 18 (citing Tr. 528, 535).)  Finally, Ms. W. asserts the ALJ improperly rejected her subjective complaints based on a finding that she was able to complete certain household tasks, without considering limitations on the nature, duration, and number of such tasks.  (*Id.* at 19.)

       The record shows the ALJ applied the correct legal standards for assessing Ms. W.'s subjective symptoms, and his findings were supported by substantial evidence.  First, the ALJ did not rely solely on boilerplate recitations; instead, he gave specific reasons for finding Ms. W.'s allegations inconsistent with the other evidence in the record.  Second, whether Ms. W.'s treatment was properly characterized as "conservative" is immaterial because the record contains ample evidence supporting the ALJ's findings regarding the limiting effects of Ms. W.'s subjective symptoms.  Contrary to Ms. W.'s claim, the ALJ did not rely on a single 2015 treatment record, but also pointed to 2019 treatment records and physical therapy records indicating improvement in her symptoms, as well as the fact that Ms. W. was generally assessed to be in no distress.  (Tr. 21–22.)  These records provide more than a scintilla of evidence supporting the ALJ's findings that Ms. W.'s limitations were not as severe as she alleged.  Finally, the ALJ discussed Ms. W.'s ability to complete household tasks in assessing her mental impairments, not her subjective symptoms.  (*Id.* at 19, 25.)  There is no indication he discounted her subjective symptoms based on her ability to do household tasks.

       For all these reasons, the ALJ did not err in his assessment of Ms. W.'s subjective symptoms.

## CONCLUSION

For the reasons set forth above, the court AFFIRMS the Commissioner's decision.

DATED this 10th day of March, 2022.

BY THE COURT:

_____
Daphne A. Oberg
United States Magistrate Judge